CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
200 Park Avenue – 17th Floor
New York, NY 10166
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

| | | |
|---|---|---|
| SABINO TUY GUARCAX,<br>MOISES CHOPEN-GUARCAX, and<br>JUAN COJTIN JULAJUJ, on behalf of themselves<br>and others similarly situated, | : <br> : <br> : <br> : <br> : | Case No. 21-<br>CV-4208 |
| Plaintiffs, | : <br> : | |
| -against- | : <br> : <br> : | FLSA<br>COLLECTIVE<br>ACTION and RULE |
| OSAKA COURT STREET INC. d/b/a OSAKA<br>JAPANESE CUISINE, QING SONG JIANG, and<br>QING FENG JIANG, | : <br> : <br> : | 23 CLASS ACTION<br>COMPLAINT |
| Defendants. | : <br> : <br> : | **Jury Trial**<br>**Demanded** |

-------------------------------------------------------------------X

Plaintiffs SABINO TUY GUARCAX, MOISES CHOPEN-GUARCAX, and

JUAN COJTIN JULAJUJ ("Plaintiffs"), on behalf of themselves and other similarly

situated employees, by and through their undersigned attorneys, Cilenti & Cooper, PLLC,

file this Complaint against defendants OSAKA COURT STREET INC. d/b/a OSAKA

JAPANESE CUISINE ("OSAKA COURT STREET INC."), QING SONG JIANG, and

QING FENG JIANG (the "Individual Defendants") (collectively, the "Defendants"), and

state as follows:

## INTRODUCTION

1.      Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), they are entitled to recover from Defendants: (a) unpaid minimum wages, (b) unpaid overtime compensation, (c) liquidated damages, (d) prejudgment and post-judgment interest, and (e) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law, they are entitled to recover from Defendants: (a) unpaid minimum wages, (b) unpaid overtime compensation, (c) unpaid "spread of hours" premium for each day their work shift exceeded ten (10) hours, (d) misappropriated tips and "tax withholdings," (e) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (f) prejudgment and post-judgment interest, and (g) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5.      Plaintiffs are each residents of Kings County, New York.

6.      Defendant, OSAKA COURT STREET INC., is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 270 Court Street, Brooklyn, New York 11231.

7.      Defendant, OSAKA COURT STREET INC., owns and operates a Japanese restaurant, doing business as Osaka Japanese Cuisine, located at 270 Court Street, Brooklyn, New York 11231 (the "Restaurant").

8.      Defendant, OSAKA COURT STREET INC., employs more than eleven (11) individuals at the Restaurant at any given time.

9.      The Individual Defendants are joint shareholders and officers of OSAKA COURT STREET INC. and, as such are joint owners, supervisors, managing agents, and proprietors of OSAKA COURT STREET INC., who actively participate in the day-to-day operation of the Restaurant and acted intentionally and maliciously and are employers pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and are jointly and severally liable with OSAKA COURT STREET INC.

10.     The Individual Defendants jointly exercise control over the Restaurant's employees in that they have the power to and do in fact: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise the work of the employees, and (v) create and maintain wage and hour records.

11.     At least within each of the three (3) most recent years related to the allegations herein, OSAKA COURT STREET INC. was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or

3

that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

12.    Defendants continuously employed Plaintiff, SABINO TUY GUARCAX, to work as a non-exempt food preparer/kitchen helper, food delivery person, dishwasher, and porter for Defendants' Restaurant from in or about June 2014 through on or about July 18, 2021.

13.    Defendants continuously employed Plaintiff, MOISES CHOPEN-GUARCAX, to work as a non-exempt food preparer/kitchen helper, dishwasher, food delivery person, and porter for Defendants' Restaurant from in or about June 2015 through on or about July 18, 2021.

14.    Defendants continuously employed Plaintiff, JUAN COJTIN JULAJUJ, to work as a non-exempt food preparer/kitchen helper, dishwasher, food delivery person, and porter for Defendants' Restaurant from in or about April 2018 through on or about July 18, 2021.

15.    The work performed by Plaintiffs was directly essential to the business operated by Defendants.

16.    Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages in direct contravention of the FLSA and New York Labor Law.

17.    Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

18.    Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned "spread of hours" premium in direct contravention of the New York Labor Law.

19.    Plaintiffs have satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

20.    The Individual Defendants actively participate in the day-to-day operation of the Restaurant.  For instance, the Individual Defendants jointly: (a) make the decision to hire and fire employees; (b) supervise and direct the work of the employees; and (c) instruct the employees how to perform their jobs.

21.    Additionally, the Individual Defendants jointly create and implement all business policies and make all crucial business decisions, including decisions concerning the number of hours the employees are permitted to work, the amount of pay that the employees are entitled to receive, and the manner and method by which the employees are to be paid.

### Plaintiff Sabino Tuy Guarcax

22.    In or about June 2014, Defendants hired Plaintiff, SABINO TUY GUARCAX, to work as a non-exempt food preparer/kitchen helper, food delivery person, dishwasher, and porter at the Restaurant.

23.    More than 20% of Plaintiff's daily and weekly work shift consisted of non-tipped work.

24.    Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly

5

rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

25.     Defendants failed to provide Plaintiff with a written wage notice/"tip credit" notification.

26.     Plaintiff worked for Defendants in those capacities until on or about July 18, 2021.

27.     Plaintiff worked over forty (40) hours per week.

28.     Plaintiff was not required to punch a time clock or other time-recording device at the beginning and end of his work shift.

29.     Defendants manually kept track of Plaintiff's daily and weekly work hours.

30.     From the beginning of the relevant six (6) year limitations period in July 2015 and continuing through in or about December 2017, Plaintiff worked six (6) days per week (Wednesday off) and, although his work schedule fluctuated slightly each day and week, he normally worked six and one-quarter (6¼) hours per day from 4:30 p.m. until 10:45 p.m.

31.     During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $15 per day ($90 per week) and worked thirty-seven and one-half (37½) hours per week (for a regular hourly rate of $2.40).

32.     Beginning in or about January 2018 and continuing through on or about March 15, 2020, Plaintiff worked two (2) days per week (Sunday and Monday) and, although his work schedule fluctuated slightly each day and week, he normally worked six and one-quarter (6¼) hours per day from 4:30 p.m. until 10:45 p.m.

33.   During this period, Plaintiff was not paid proper minimum wages or overtime compensation.  During this period, Plaintiff was paid at the rate of $15 per day ($30 per week) and worked twelve and one-half (12½) hours per week (for a regular hourly rate of $2.40).

34.   The Restaurant ceased operating from on or about March 16, 2020 through in or about May 2020 due to the COVID-19 pandemic.  Therefore, Plaintiff makes no claim for unpaid wages during this period.

35.   Beginning in or about June 2020 and continuing through in or about September 2020, Plaintiff worked work four (4) days per week (Tuesday, Thursday, and Saturday off) and, although his work schedule fluctuated slightly each day and week, he normally worked a split shift two (2) days per week from 11:30 a.m. until 3:00 p.m., and 4:30 p.m. until 10:00 p.m.; and a double shift two (2) days per week from 11:30 a.m. until 10:00 p.m.  Plaintiff only received a designated break between 3:00 p.m. and 4:30 p.m. while working a split shift.

36.   During this period, Plaintiff was not paid proper minimum wages.  During this period, Plaintiff was paid at the rate of $15 per day plus an additional $5 for each double and/or split shift ($80 per week) and worked thirty-nine (39) hours per week (for a regular hourly rate of $2.05).  If Plaintiff worked in excess of forty (40) hours, work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

37.   Beginning in or about October 2020 and continuing through in or about December 2020, Plaintiff worked work seven (7) days per week and, although his work schedule fluctuated slightly each day and week, he normally worked a split shift two (2)

days per week from 11:30 a.m. until 3:00 p.m., and 4:30 p.m. until 10:00 p.m.; a double

shift two (2) days per week from 11:30 a.m. until 10:00 p.m.; and a single shift three (3)

days per week from 4:30 p.m. until 10:00 p.m. Plaintiff only received a designated break

between 3:00 p.m. and 4:30 p.m. while working a split shift.

38.      During this period, Plaintiff was not paid proper minimum wages and

overtime compensation. During this period, Plaintiff was paid at the rate of $15 per day

plus an additional $5 for each double and/or split shift ($125 per week) straight time for

all hours worked, and worked fifty-five and one-half (55½) hours per week (for a regular

hourly rate of $3.13). Work performed above forty (40) hours per week was not paid at

the statutory rate of time and one-half as required by state and federal law.

39.      Beginning in or about January 2021 and continuing through in or about

April 2021, Plaintiff worked work six (6) (and sometimes seven (7)) days per week and,

although his work schedule fluctuated slightly each day and week, he normally worked a

split shift three (3) days per week from 11:30 a.m. until 3:00 p.m., and 4:30 p.m. until

10:00 p.m.; and a single shift three (3) days per week from 4:30 p.m. until 10:00 p.m.

Plaintiff only received a designated break between 3:00 p.m. and 4:30 p.m. while

working a split shift.

40.      During this period, Plaintiff was not paid proper minimum wages and

overtime compensation. During this period, Plaintiff was paid at the rate of $15 per day

plus an additional $5 for each split shift ($105 per week) straight time for all hours

worked, and worked forty-three and one-half (43½) hours per week (and sometimes

more) (for a regular hourly rate of $2.63). Work performed above forty (40) hours per

week was not paid at the statutory rate of time and one-half as required by state and federal law.

41.     Beginning in or about May 2021 and continuing through the remainder of his employment on or about July 18, 2021, Plaintiff worked work six (6) days per week and, although his work schedule fluctuated slightly each day and week, he normally worked five and one-half (5½) hours per day four (4) days per week from 4:30 p.m. until 10:00 p.m.; and five (5) hours per day two (2) days per week from 5:00 p.m. until 10:00 p.m.

42.     During this period, Plaintiff was not paid proper minimum wages.  During this period, Plaintiff was paid at the rate of $15 per day ($90 per week), and worked thirty-two (32) hours per week (for a regular hourly rate of $2.81).

43.     Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

44.     Upon paying Plaintiff his cash wages each week, Defendants failed to provide Plaintiff with correct and accurate wage statement setting forth, among other things, Plaintiff's gross wages, deductions, and net wages.

**Plaintiff Moises Chopen-Guarcax**

45.     In or about June 2015, Defendants hired Plaintiff, MOISES CHOPEN-GUARCAX, to work as a non-exempt food preparer/kitchen helper, dishwasher, food delivery person, and porter at the Restaurant.

46.     More than 20% of Plaintiff's daily and weekly work shift consisted of non-tipped work.

47.    Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

48.    Defendants failed to provide Plaintiff with a written wage notice/"tip credit" notification.

49.    Plaintiff worked for Defendants in those capacities until on or about July 15, 2021.

50.    Plaintiff worked over forty (40) hours per week.

51.    Plaintiff was not required to punch a time clock or other time-recording device at the beginning and end of his work shift.

52.    Defendants manually kept track of Plaintiff's daily and weekly work hours.

53.    From the beginning of the relevant six (6) year limitations period in July 2015 and continuing through on or about March 15, 2020, Plaintiff worked six (6) days per week (Monday off) and, although his work schedule fluctuated slightly each day and week, he normally worked six and one-half (6½) hours per day five (5) days per week from 4:30 p.m. until 11:00 p.m.; and a split shift one (1) day per week from 11:30 a.m. until 3:00 p.m., and 4:30 p.m. until 11:00 p.m. Plaintiff received a break only between 3:00 p.m. and 4:30 p.m. while working a split shift.

54.    During this period, Plaintiff was not paid proper minimum wages and overtime compensation. During this period, Plaintiff was paid at the rate of $15 per day plus an additional $5 for each split shift ($95 per week) and worked forty-two and one-

half (42½) hours per week (for a regular hourly rate of $2.38). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

55.    The Restaurant ceased operating from on or about March 16, 2020 through in or about May 2020 due to the COVID-19 pandemic. Therefore, Plaintiff makes no claim for unpaid wages during this period.

56.    Beginning in or about June 2020 and continuing through in or about June 2021, Plaintiff worked three days per week (Friday through Monday off) and, although his work schedule fluctuated slightly each day and week, he normally worked a single five and one-half (5½) shift from 4:30 p.m. until 10:00 p.m.

57.    During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $15 per day ($45 per week) and worked sixteen and one-half (16½) hours per week (for a regular hourly rate of $2.73).

58.    Beginning in or about July 2021 and continuing through the remainder of his employment on or about July 15, 2021, Plaintiff worked three days per week (Friday through Monday off) and, although his work schedule fluctuated slightly each day and week, he normally worked a single five and one-half (5½) shift from 4:30 p.m. until 10:00 p.m.

59.    During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $30 per day ($90 per week) and worked sixteen and one-half (16½) hours per week (for a regular hourly rate of $5.45).

60.     Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

61.     Upon paying Plaintiff his cash wages each week, Defendants failed to provide Plaintiff with correct and accurate wage statement setting forth, among other things, Plaintiff's gross wages, deductions, and net wages.

**Plaintiff Juan Cojtin Julajuj**

62.     In or about April 2018, Defendants hired Plaintiff, JUAN COJTIN JULAJUJ, to work as a non-exempt food preparer/kitchen helper, dishwasher, food delivery person, and porter at the Restaurant.

63.     More than 20% of Plaintiff's daily and weekly work shift consisted of non-tipped work.

64.     Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

65.     Defendants failed to provide Plaintiff with a written wage notice/"tip credit" notification.

66.     Plaintiff worked for Defendants in those capacities until on or about July 18, 2021.

67.     Plaintiff worked over forty (40) hours per week.

68.     Plaintiff was not required to punch a time clock or other time-recording device at the beginning and end of his work shift.

69.      Defendants manually kept track of Plaintiff's daily and weekly work hours.

70.      From the beginning of his employment in April 2018 and continuing through in or about December 2018, Plaintiff worked six (6) days per week (Tuesday off) and, although his work schedule fluctuated slightly each day and week, he normally worked a split shift four (4) days per week from 11:00 a.m. until 3:00 p.m., and 4:30 p.m. until 11:00 p.m.; and a split shift two (2) days per week from 11:00 a.m. until 3:00 p.m., and 4:30 p.m. until 12:00 a.m.  Plaintiff received a break between 3:00 p.m. and 4:30 p.m. while working a split shift.

71.      During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $550 per week straight time for all hours worked, and worked sixty-five (65) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

72.      Beginning in or about January 2019 and continuing through in or about October 2019, Plaintiff worked six (6) days per week (Tuesday off) and, although his work schedule fluctuated slightly each day and week, he normally worked a split shift four (4) days per week from 11:00 a.m. until 3:00 p.m., and 4:30 p.m. until 11:00 p.m.; and a split shift two (2) days per week from 11:00 a.m. until 3:00 p.m., and 4:30 p.m. until 12:00 a.m.  Plaintiff received a break between 3:00 p.m. and 4:30 p.m. while working a split shift.

73.      During this period, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid at the rate of $550 per

week straight time for all hours worked, and worked sixty-five (65) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

74.     Beginning in or about November 2019 and continuing through on or about March 15, 2020, Plaintiff worked six (6) days per week (Tuesday off) and, although his work schedule fluctuated slightly each day and week, he normally worked a split shift four (4) days per week from 11:00 a.m. until 3:00 p.m., and 4:30 p.m. until 11:00 p.m.; and a split shift two (2) days per week from 11:00 a.m. until 3:00 p.m., and 4:30 p.m. until 12:00 a.m.  Plaintiff received a break between 3:00 p.m. and 4:30 p.m. while working a split shift.

75.     During this period, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid at the rate of $575 per week straight time for all hours worked, and worked sixty-five (65) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

76.     The Restaurant ceased operating from on or about March 16, 2020 through in or about May 2020 due to the COVID-19 pandemic.  Therefore, Plaintiff makes no claim for unpaid wages during this period.

77.     Beginning in or about June 2020 and continuing through in or about April 2021, Plaintiff worked six (6) days per week (Wednesday off) and, although his work schedule fluctuated slightly each day and week, he normally worked a split shift five (5) days per week from 11:00 a.m. until 3:00 p.m., and 4:30 p.m. until 10:00 p.m.; and a

double shift one (1) day per week from 11:00 a.m. until 10:00 p.m.  Plaintiff received a break between 3:00 p.m. and 4:30 p.m. only while working a split shift.

78.      During this period, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid at the rate of $20 per day plus an additional $10 for each split shift ($180 per week) and worked fifty-eight and one-half (58½) hours per week (for a regular hourly rate of $4.50).  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

79.      Beginning in or about May 2021 and continuing through the remainder of his employment on or about July 18, 2021, Plaintiff worked six (6) days per week (Wednesday off) and, although his work schedule fluctuated slightly each day and week, he normally worked a split shift one (1) day per week from 11:30 a.m. until 3:00 p.m., and 4:30 p.m. until 10:00 p.m.; and a single shift one (1) day per week from 6:00 p.m. until 10:00 p.m.; and a single shift four (4) days per week from 4:30 p.m. until 10:00 p.m. Plaintiff received a break between 3:00 p.m. and 4:30 p.m. only while working a split shift.

80.      During this period, Plaintiff was not paid proper minimum wages.  During this period, Plaintiff was paid at the rate of $100 for the split shift day, and $83 for the remaining single shift days ($183 per week) and worked thirty-five (35) hours per week (for a regular hourly rate of $5.23).

81.      Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

82.    Upon paying Plaintiff his cash wages each week, Defendants failed to provide Plaintiff with correct and accurate wage statement setting forth, among other things, Plaintiff's gross wages, deductions, and net wages.

**Defendants' Unlawful Tip Sharing/Pooling as to All Plaintiffs**

83.    In addition to failing to pay Plaintiffs their proper minimum wages, overtime compensation, and "spread of hours" premium, Defendants created an unlawful tip sharing/pooling arrangement for its tipped employees, including Plaintiffs.

84.    Not only did Defendants create the tip sharing/pooling arrangement, Defendants also monitored and retained the tip funds each evening and distributed the tips at the end of each week.

85.    As part of its tip sharing/pooling arrangement, Defendants unlawfully retained a portion of Plaintiffs' tips for "the house."  More specifically, Plaintiffs were required to forfeit 25% of their tips to Defendants.

86.    As a result of Defendants unlawful tip pooling/sharing arrangement, which deprived Defendants' tipped employees of all of their rightful tips, Defendants are not entitled to take any "tip credits" under federal or state law.  As such, Defendants are required to pay all of its tipped employees, including Plaintiffs, at the full statutory minimum wage rate.

**Defendants' Unlawful Deduction/"Kickback" as to All Plaintiffs**

87.    In addition to the foregoing, Defendants also unlawfully withheld wages from Plaintiffs.

88.    More specifically, Defendants misrepresented to Plaintiffs that Defendants were paying payroll taxes on their behalf when, in fact, they did not.

89.     Defendants unlawfully withheld/deducted approximately 17% of Plaintiffs' wages for payroll taxes, but failed to actually pay that money to the governmental authorities on behalf of Plaintiffs.

90.     Defendants knowingly and willfully operate their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiffs and other similarly situated employees.

91.     Defendants knowingly and willfully operate their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

92.     Defendants knowingly and willfully operate their business with a policy of not paying Plaintiffs and other similarly situated employees "spread of hours" premium for each day that their work shift exceeded ten (10) hours, in direct violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

93.     Defendants knowingly and willfully operate their business with a policy of unlawfully deducting and/or withholding wages from Plaintiffs, or receiving unauthorized "kickbacks" from Plaintiffs and other similarly situated employees, in direct contravention of New York State Labor Law.

94.     At all relevant times, upon information and belief, and during the course of Plaintiffs' employment, Defendants failed to maintain accurate and sufficient wage and hour records.

## COLLECTIVE ACTION ALLEGATIONS

95.     Plaintiffs bring this action individually and as class representatives on behalf of themselves and all other current and former non-exempt "front-of-the-house" and "back-of-the-house" employees who have been or were employed by Defendants since July 27, 2018 through the close of the opt-in period as ultimately set by the Court (the "Collective Action Period"), and who were compensated at rates less than the statutory minimum wage and/or less than time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

96.     The collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

97.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

98.     This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of

either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

99.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

100.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

a.     Whether Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA;

b.     Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiffs and the Collective Action Members;

c.     What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.    Whether Defendants failed to pay Plaintiffs and the Collective Action Members statutory minimum wages;

e.    Whether Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.    Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

g.    Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

101.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

102.    Plaintiffs and others similarly situated have been substantially damaged by Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

103.    Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

104.    Plaintiffs bring their New York Labor Law claims on behalf of all non-exempt "front-of-the-house" and "back-of-the-house" employees who were employed by Defendants at any time since July 27, 2015 (the "Class Period") through the date the Court grants class certification, and who have not been paid statutory minimum wages and/or overtime compensation in violation of the New York Labor Law (the "Class").

105.    The persons in the Class identified herein are so numerous that joinder of all members is impracticable.  Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of Defendants, the Class consists of all non-managerial current and former employees and, therefore, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

106.    The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

107.    Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

108.    Plaintiffs have committed themselves to pursuing this action and have retained counsel experienced in employment law and class action litigation.

109.    Plaintiffs will fairly and adequately protect the interests of the NY Class members.  Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Class and Collective Action Members to represent their interests fairly and adequately, and that they must consider the interests of the Class and Collective Action Members just as they would represent and consider their own interests,

and that they may not favor their own interests over those of the Class or Collective Action Members.

110.    Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class and Collective Action Members.  Plaintiffs understand that in order to provide adequate representation, they must remain informed of litigation developments and they understand that they may be called upon to testify in depositions and at trial.

111.    Plaintiffs have the same interests in this matter as all other members of the Class and Plaintiffs' claims are typical of the Class.

112.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.    Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York Labor Law;

b.    Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiffs and the Class members;

c.    What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.    Whether Defendants failed to pay Plaintiffs and the Class members statutory minimum wages;

e.    Whether Defendants failed to pay Plaintiffs and the Class members overtime compensation for all hours worked in excess of forty (40)

hours per workweek, in violation of the New York Labor Law and the regulations promulgated thereunder;

f.     Whether Defendants' violations of the New York Labor Law are willful as that terms is used within the context of the New York Labor Law; and,

g.     Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs, attorneys' fees, and costs and disbursements.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

113.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "112" of this Complaint as if fully set forth herein.

114.    At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

115.    At all relevant times, Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA.

116.    Upon information and belief, at least within each of the three (3) most recent years relevant to the allegations herein, OSAKA COURT STREET INC. has had gross revenues in excess of $500,000.

117.    Plaintiffs and the Collective Action Members worked hours for which they were not paid the statutory minimum wage.

118.    Defendants had, and continue to have, a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs and the Collective Action Members for hours worked.

119.    Defendants failed to pay Plaintiffs and the Collective Action Members minimum wages in the lawful amount for hours worked.

120.    Plaintiffs and the Collective Action Members were entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

121.    Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

122.    At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and the Collective Action Members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

123.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and the Collective Action Members at the statutory minimum wage rate and the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or

should have known such was due and that non-payment of minimum wages and overtime compensation would financially injure Plaintiffs and the Collective Action Members.

124. As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

125. Defendants failed to properly disclose or apprise Plaintiffs and the Collective Action Members of their rights under the FLSA.

126. As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

127. Due to Defendants' reckless, willful and unlawful acts, Plaintiffs and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid minimum wages and unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

128. Plaintiffs and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

129. Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "128" of this Complaint as if fully set forth herein.

130.   Defendants employed Plaintiffs and the Class members within the meaning of New York Labor Law §§ 2 and 651.

131.   Defendants knowingly and willfully violated the rights of Plaintiffs and members of the Class by failing to pay them minimum wages in the lawful amount for hours worked.

132.   Defendants knowingly and willfully violated the rights of Plaintiffs and the Class members by failing to pay Plaintiffs and the Class members overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

133.   Employers are required to pay a "spread of hours" premium of one (1) additional hour's pay at the statutory minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours.  New York State Department of Labor Regulations § 146-1.6.

134.   Defendants knowingly and willfully violated the rights of Plaintiffs and the Class members by failing to pay "spread of hours" premium to Plaintiffs and the Class members for each day that their work shift exceeded ten (10) hours pursuant to New York State Department of Labor Regulations.

135.   Defendants knowingly and willfully violated the rights of Plaintiffs and members of the Class by misappropriating tips from Plaintiffs and members of the Class by requiring them to participate in an unlawful tip sharing/pooling arrangement, in violation of the New York Labor Law and New York State Department of Labor Regulations §§ 146-2.14, 15, and 16.

136.    Defendants failed to properly disclose or apprise Plaintiffs and the Class members of their rights under the New York Labor Law.

137.    The New York Labor Law prohibits an employer from making any deductions from wages, other than standard deductions for taxes. N.Y. Lab. Law § 193.

138.    The New York Labor Law also prohibits employers from receiving "kickbacks" from their employees. N.Y. Lab. Law § 198-b.

139.    Defendants regularly obtained unlawful kickbacks from Plaintiff by making fraudulent and unlawful deductions/withholdings from Plaintiff's wages and tips.

140.    Defendants failed to furnish Plaintiffs and the Class members with a statement with every payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations § 146-2.3.

141.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

142.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 146-2.1.

143.    Neither at the time of their hiring, nor thereafter, did Defendants notify Plaintiffs and the Class members of their rates of pay and their regularly designated payday, in contravention of New York Labor Law § 195(1).

144.    Due to Defendants' New York Labor Law violations, Plaintiffs and the Class members are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime compensation, unpaid "spread of hours" premium, misappropriated tips and withholdings, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

145.    Plaintiffs and the Class members are also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as statutory damages pursuant to the New York State Wage Theft Prevention Act.

## PRAYER FOR RELEIF

**WHEREFORE**, Plaintiffs SABINO TUY GUARCAX, MOISES CHOPEN-GUARCAX, and JUAN COJTIN JULAJUJ, on behalf of themselves and all similarly situated Collective Action Members and Class members, respectfully request that this Court grant the following relief:

(a)    An award of unpaid minimum wages due under the FLSA and New York Labor Law;

(b)    An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(c)    An award of unpaid "spread of hours" premium due under the New York Labor Law;

(d)    An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation pursuant to 29 U.S.C. § 216;

(e)    An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(f)    An award of unpaid misappropriated tips and withholdings in violation of state law;

(g)    An award of statutory damages pursuant to the New York State Wage Theft Prevention Act;

(h)    An award of prejudgment and post-judgment interest;

(i)    An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

(j)    Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues.

Dated: New York, New York
       July 27, 2021

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiffs*
200 Park Avenue – 17th Floor
New York, New York 10166
T. (212) 209-3933
F. (212) 209-7102

By: _____
    Giustino (Justin) Cilenti (GC2321)

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, Sabino Tuy Guarcax, am an individual currently or formerly employed by

Osaka Court Street Inc, and/or related entities. I consent to be a plaintiff in

the above-captioned action to collect unpaid wages.

Dated: New York, New York
       June 24, 2021

**CONSENT TO SUE UNDER
FAIR LABOR STANDARDS ACT**

I, Moises Chopen-Guaroax, am an individual currently or formerly employed by

Osaka Court Street Inc , and/or related entities.  I consent to be a plaintiff in

the above-captioned action to collect unpaid wages.

Dated: New York, New York
       June 24, 2021

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, _Juan Cojtin Julajuj_, am an individual currently or formerly employed by

_Osaka Court Street Inc_____, and/or related entities.  I consent to be a plaintiff in

the above-captioned action to collect unpaid wages.

Dated: New York, New York
      June 24, 2021